UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARA WILSON, as Independent Administrator of the Estate of ALEXIS WILSON, deceased, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-03609 |
| v. | ) ) | Judge Sharon Johnson Coleman |
| P.O. RYAN PEREZ and P.O. JARED CARLTON, individually, and the VILLAGE OF DOLTON, a Municipal Corporation, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cara Wilson ("Plaintiff"), as Independent Administrator of the Estate of Alexis Wilson ("Wilson"), brings an eight-count Second Amended Complaint against Defendants P.O. Ryan Perez, P.O. Jared Carlton, and the Village of Dolton (the "Village"). Before the Court is the Village's Rule 12(b)(6) motion to dismiss Count VII of that complaint, which alleges that the Village is liable for its failure to vet, train, supervise, and discipline its police officers under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). For the following reasons, the Court grants in part and denies in part the Village's motion [74].

**BACKGROUND**

The Court accepts the following allegations as true for the purposes of this opinion. On July 27, 2021, Wilson and a passenger went to the drive-thru of a Baba's restaurant in Dolton, Illinois. Wilson got into a verbal dispute with a Baba's employee and that employee called the police. Dolton police officers Ryan Perez and Jared Carlton responded. After arriving at Baba's, the officers ordered Wilson and her passenger out of the car. Wilson's passenger complied, but Wilson refused to exit at first because she was not properly dressed and questioned why the police were called. Officer Perez allegedly opened Wilson's door and began punching Wilson. Wilson, afraid

1

for her safety, began to drive away. Officer Carlton fired his gun at Wilson's fleeing car. Hearing gunfire, Officer Perez fired his weapon several times in the same direction. At least one of the officers shot Wilson and, tragically, she died shortly after.

Plaintiff alleges that Officer Perez was not employed as a law enforcement officer with any department before working for the Village. Officer Perez's personnel file does not show whether Officer Perez was subject to the vetting process required under the Illinois Police Training Act, 50 ILCS 705/1, *et seq*. Plaintiff alleges that the Village did not require or provide law enforcement training to Officer Perez before he was hired full time nor in the fourteen-month period during which he worked part time. Plaintiff alleges that the Village similarly failed to train its other police officers. While employed with the Village, Officer Perez allegedly caused the deaths of two other Village residents, first during a 2016 shooting at a Shell gas station and second during his physical restraint of an individual in custody at Advocate Christ Medical Center in 2018. Plaintiff alleges that the Village failed to supervise, train, or discipline Officer Perez after these incidents, and that it similarly failed to supervise, train, or discipline its other law enforcement officers.

**LEGAL STANDARD**

Motions to dismiss under Rule 12(b)(6) test the sufficiency of a complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). At this stage, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007), meaning the complaint alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

for her safety, began to drive away. Officer Carlton fired his gun at Wilson's fleeing car. Hearing gunfire, Officer Perez fired his weapon several times in the same direction. At least one of the officers shot Wilson and, tragically, she died shortly after.

Plaintiff alleges that Officer Perez was not employed as a law enforcement officer with any department before working for the Village. Officer Perez's personnel file does not show whether Officer Perez was subject to the vetting process required under the Illinois Police Training Act, 50 ILCS 705/1, *et seq*. Plaintiff alleges that the Village did not require or provide law enforcement training to Officer Perez before he was hired full time nor in the fourteen-month period during which he worked part time. Plaintiff alleges that the Village similarly failed to train its other police officers. While employed with the Village, Officer Perez allegedly caused the deaths of two other Village residents, first during a 2016 shooting at a Shell gas station and second during his physical restraint of an individual in custody at Advocate Christ Medical Center in 2018. Plaintiff alleges that the Village failed to supervise, train, or discipline Officer Perez after these incidents, and that it similarly failed to supervise, train, or discipline its other law enforcement officers.

**LEGAL STANDARD**

Motions to dismiss under Rule 12(b)(6) test the sufficiency of a complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). At this stage, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007), meaning the complaint alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**DISCUSSION**

A municipality can be held liable for violating the Constitution or federal law under the *Monell* doctrine. *Stockton v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022). To succeed on a *Monell* claim, a plaintiff must show: "(1) he suffered a deprivation of a constitutional right; (2) as a result of an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was; (3) the cause of his constitutional injury." *See Carmona v. City of Chicago*, No. 15-CV-00462, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018) (St. Eve, J.) (citing *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017)). A so-called "failure to train" claim against a municipality is a form of an unlawful-policy *Monell* claim: "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). Although the parties' arguments are somewhat porous, Plaintiff's allegations can be separated into two general categories: (1) the Village engaged in a widespread custom of ignoring issues surrounding its officers' use of deadly force and (2) the Village failed to adequately train its police.

1. *Widespread Custom*

There are no "bright-line rules defining a 'widespread custom'" in *Monell* cases. *Thomas v. Cook Cnty. Sheriff's Office*, 604 F.3d 293, 303 (7th Cir. 2010). But a plaintiff must demonstrate that the custom is more than a "random event." *Id.* "*Monell* claims based on allegations of an unconstitutional municipal practice or custom—as distinct from an official policy—normally require evidence that the identified practice or custom caused multiple injuries." *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016). To distinguish a widespread custom from a random event, a plaintiff may show "an implicit policy or a gap in expressed policies" or "a series of violations to lay the premise of deliberate indifference." *Thomas*, 604 F.3d at 303 (citations omitted).

Plaintiff does not point to any implicit policy or gap in existing policies to support a widespread custom claim. Plaintiff instead argues that the Village was on notice that its officers routinely and wrongfully used deadly force but failed to correct the issue. Specifically, Plaintiff alleges that Officer Perez used deadly force at least twice against other Village residents, and that the Village failed to supervise or discipline him in response. Plaintiff alleges that the Village's failures allowed the alleged misconduct to continue.

Although the Village does not dispute that "these instances insinuate misconduct," Dkt. 74 at 8, the Village argues that Plaintiff has not sufficiently alleged either of Officer Perez's uses of deadly force was wrongful. Therefore, the Village argues, Plaintiff cannot support a claim that the Village engaged in an unconstitutional practice or custom of ignoring unlawful uses of deadly force. At this stage, however, Plaintiff "need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists." *Barwicks v. Dart*, No. 14-CV-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (Dow, J.). By alleging that the Village failed to vet, supervise, and discipline its officers, and that this failure allowed Officer Perez's potentially unlawful use of deadly force to persist through at least three occasions, Plaintiff has done just that.

The Village also argues that three alleged instances of misconduct is not enough to support a "widespread custom" claim. The Court disagrees. "Widespread custom" claims are not merely reducible to a counting game. Courts in this district also focus "on the circumstances surrounding the plaintiff's constitutional affront, and additional facts probative of a widespread custom." *Carmona*, 2018 WL 1468995, at *2 (collecting cases). And importantly here, there is a difference in the standards of pleading a widespread custom claim and proving one. *Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *3 (N.D. Ill. Mar. 2, 2018) (St. Eve, J.) (citing *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016)). The Village's reliance on *Gable v. City of Chicago*, 296 F.3d

4

531 (7th Cir. 2002), therefore makes its argument less persuasive at this juncture. The *Gable* court addressed a full record on summary judgment and found that three occasions of misconduct over four years was not enough to establish a widespread custom. *Id.* at 538. In contrast, "[a]t the pleading stage" of a widespread custom case, a plaintiff need only "allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

In this case, Plaintiff alleges a particularly severe incident (police opening fire on a woman for driving away from a beating) that followed two instances of the same police officer using deadly force in allegedly similar circumstances. Plaintiff alleges that this pattern is indicative of a larger Village problem. The Village is correct that Plaintiff will have to prove more than Officer Perez's unlawful use of deadly force in Wilson's case alone to succeed on a *Monell* claim. At this stage, however, Plaintiff has pled enough to warrant discovery on that claim.

*2. Failure to Train*

Where a municipality has notice that its employees' "actions constitute deliberate indifference to the rights of the public," the municipality's "decision not to train [those] employees" may support a *Monell* claim. *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021). "[F]ailure-to-train liability does not require proof of widespread constitutional violations before that failure becomes actionable; a single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Id.*

The Village argues that Plaintiff's allegations are conclusory and do not actually suggest that the Village failed to train its officers. When read together, and in the light most favorable to Plaintiff, however, they do allege that the Village failed to provide to Perez and its other officers a standard police training protocol, Dkt. ¶¶ 78–86, 100, even after the Village knew at least Officer Perez had used deadly force requiring such training twice. *Id.* ¶¶ 91–94. Plaintiff also alleges that

5

Officer Perez's "personnel file" was void of any evidence of training completion or Village requirements for state required training. Plaintiff further alleges that the Village "did not require nor provide the necessary training to be a law enforcement officer to [Officer Perez]," and there was no indication in his personnel file that he obtained any certification or licensing from a certified police training institute. *Id.* ¶¶ 86–87.

The Village responds by asking this Court to consider a public database supposedly showing Officer Perez's proper certification prior to being hired by the Village. But even if the Court were to consider the public database at the motion to dismiss stage, there would still remain a question about what training was required for Village officers in response to repeated uses of deadly force, and what training was in fact provided or confirmed.

The Village is correct that failure-to-train liability is "rare," *Flores*, 997 F.3d at 731, and "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. For the reasons above, however, Plaintiff has alleged enough to proceed on discovery related to this claim.

3. *Causation*

Causation is an essential element in *Monell* claims, as without it *Monell* liability "collapses into *respondeat superior* liability." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (quotation omitted). "To satisfy the [causation] standard, the plaintiff must show a 'direct causal link' between the challenged municipal action and the violation of his constitutional rights." *Id.* The Village argues that Plaintiff has not pleaded any facts demonstrating any officer's poor training caused them to use excessive force, nor any facts showing that the

6

officers "were aware of any lapses in the Village's disciplinary system and thus motivated to use unreasonable force." (Dkt. 74 at 8.) The Court disagrees.

The Court must make reasonable inferences in Plaintiff's favor at this point of the case. *Trujillo*, 926 F.3d at 397. Based on the allegations discussed in depth above, it is reasonable to infer that the Village's alleged lack of training on the use of deadly force caused the officers to unlawfully use deadly force against Wilson when she drove away from their encounter. It is also reasonable to infer that the Village's alleged failure to discipline or supervise officers who unreasonably use deadly force motivates the same officers to continue to do so. The Village's argument about the officers' awareness of lapses in discipline and motivations gives credence to these points. Those are exactly the kind of issues that Plaintiff would need depositions to further litigate.

   *4. Punitive Damages*

Plaintiff concedes that the punitive damages claim must be stricken from Count VII. (Dkt. 76 at 12.) The Court therefore dismisses Plaintiff's claim for punitive damages under Count VII.

**CONCLUSION**

For these reasons, the Court denies the Village's motion to dismiss Count VII in its entirety except to the extent the Village moves to strike Plaintiff's claim for punitive damages. The Court dismisses Plaintiff's claim for punitive damages under Count VII only.

**IT IS SO ORDERED.**

Date: 2/22/2024

_____
SHARON JOHNSON COLEMAN
United States District Judge